**UNITED STATES DISTRICT COURT**

MIDDLE DISTRICT OF ALABAMA
OFFICE OF THE CLERK
POST OFFICE BOX 711
MONTGOMERY, ALABAMA 36101-0711

DEBRA P. HACKETT, CLERK

TELEPHONE (334) 954-3600

November 2, 2007

# NOTICE OF CORRECTION

**From:    Clerk's Office**

**Case Style:    Atwell v. Smart Alabama, LLC**

**Case Number:    2:06-cv-01089-MEF**

**This Notice of Correction was filed in the referenced case this date to correct the PDF Exhibit K document previously attached by E-Filer and to reflect that there is no Exhibit Q, it was erroneously attached.**

**The corrected PDF document of Exhibit K is attached to this notice for your review. Reference is made to document # 18 filed on   November 2, 2007.**

# AFFIDAVIT OF RANCE MADDOX

**STATE OF MISSISSIPPI** )

**LOWNDES COUNTY** )

1. My name is Rance Maddox. I am over the age of nineteen and I give this statement freely and under penalty of perjury.

2. I was employed by SMART Alabama as its Safety Manager from March 2005 through January 2006. As Safety Manager, I was responsible for plant safety audits, ergonomics, lockout/tagout procedures, workers' compensation, and OSHA compliance. I resigned my employment because of differences with a higher-level manager, Director Kwon, which had nothing to do with harassment or being accused of harassment.

3. When I was hired by SMART Alabama, I received a copy of SMART's anti-harassment policy. I understood that SMART prohibited any form of harassment, sexual or otherwise. I knew that engaging in any form of harassment would result in discipline, including termination. I served as an EEO Officer in the Navy and have a thorough understanding of what constitutes harassment.

4. When I worked in the Safety Office at SMART as Safety Manager, the Safety Office was located on the production side of the plant. The Safety

1615814 v1

Office's door had a window within the door. We often kept the door open because the air conditioning did not work properly. Many employees passed by the Safety Offfice on the way to the breakroom.

5.     I knew Robin Atwell from working in the safety office. She began working in the Safety Office after sustaining an on-the-job injury. She was a safety assistant. As a safety assistant, she was responsible for inputting workers' compensation cases, completing accident reports, and verifying details in such reports. She was also responsible for maintaining and updating SMART's OSHA 300 logs. There were other safety assistants, including Colinda Porter, Lakeshia Jessie, Melissa McGough, and Carissa Jones.

6.     Initially, Ms. Atwell performed her duties well. However, after about 30 days in the safety office, Ms. Atwell began to miss work frequently or be late, have problems with inputting workers' compensation, and problems entering OSHA logs. When I began counseling her verbally, I observed that Ms. Atwell did not appreciate it, and her attitude towards me changed.

7.     I provided each safety assistant with a job description, including Ms. Atwell. I verbally counseled Ms. Atwell as to her performance, and Colinda Porter was present. I never wrote her up for wearing blue jeans. Gary Sport, my manager, encouraged us to dress professionally, and I verbally told safety assistants, including Ms. Atwell and Lisa Bodiford, to dress professionally.

8. I did not impose extra job duties on Ms. Atwell. Each safety assistant worked weekends. We would post a schedule for the weekends, as SMART operated on a six-day a week schedule. There were occasions on which I would call Ms. Atwell at home. These were to discuss only work matters, including the locations of work files and where she was if she had not reported to work. I did not ask her out for drinks or lunch. I never told her "I've got a real man for you." I never discussed that it was difficult to be monogamous. I never asked if her breasts were real.

9. The only time I touched Ms. Atwell would have been if I was leaning over her computer to see a report. I did not ever try to hold her hands. I did not hug her on her birthday or at any other time. I never asked her about her breasts or asked to touch them. I never rubbed my pelvis area against her.

10. I did tell Ms. Atwell "we'll be a team" because SMART encourages a team environment and was not referring to any matters outside of work. I likely told her "You've got to work with me" but only in the context of accomplishing tasks in the safety office. I told Ms. Atwell that I would take care of reports she had not completed. I never made any such statements in a sexual context.

11. Gary Sport did meet with me about the manner I spoke to Ms. Atwell and other employees in the Safety Office. He encouraged me to be professional and to have a witness present when speaking with them. He never informed me

that Ms. Atwell had complained that I sexually harassed her. At no time did I sexually harass her. At no time did I see Ms. Atwell outside of work, other than one occasion when she appeared when I was bowling with Gary Sport, David McGoff, and Lloyd Weathers. I did not invite her, and did not talk to her while she was there.

12. Robin did comment in my presence that Lloyd Weathers was "fine" and a "studmuffin." Robin did ask if I'd like to go get drinks at Double Branch in Troy. I refused.

13. Robin did socialize with members of the security team serving SMART at the front desk. I'd find her at the front desk, talking to the receptionist, employed by the security company.

14. At no time did I terminate Ms. Atwell's employment from the Safety Office or from SMART. I did prepare a memorandum terminating her employment from the Safety Office, but not from SMART. I would have had to have the approval of Gary Sport to issue this memo, but I never did. I never told Ms. Atwell that she was terminated or that she should resign. I never took any form of action against her because she refused any advances I allegedly made. I deny making any advances of any kind.

15. The foregoing is true and correct to the best of my knowledge, and I declare it under penalty of perjury.

/s/ Rance Maddox
RANCE MADDOX

11/01/07
DATE


STATE OF MISSISSIPPI    )

LOWNDES COUNTY    )

    Sworn to and subscribed before me on this the __1__ day of November, 2007.

_____
NOTARY PUBLIC

My commission expires: 7/21/2010

1615814 v1            5