IN THE UNTIED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ROBIN ATWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:06 CV 1089-MEF |
| ) | |
| SMART ALABAMA, LLC, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF, ROBIN ATWELL'S MEMORANDUM BRIEF IN
RESPONSE TO THE DEFENDANT SMART ALABAMA, LLC'S
MOTION FOR SUMMARY JUDGMENT**

**COMES NOW** the Plaintiff, Robin Atwell (hereafter Plaintiff), and submits this Memorandum Brief in response to the Defendant Smart Alabama LLC's Motion for Summary Judgment:

**I. STATEMENT OF THE CASE**

Plaintiff, Robin Atwell, filed suit against Smart Alabama LLC for sexual harassment, hostile work environment and retaliation related to claimed sexual harassment by her supervisor, Rance Maddox. The Defendant has filed a Motion for Summary Judgment claiming that the undisputed facts reveal that there are no genuine issues of material fact related to the Plaintiff's claims and that they are entitled to a Summary Judgment.

In this Brief, the Plaintiff provides more than sufficient evidence that there are genuine issues of material fact left to be determined by a jury. Consequently, Summary Judgment is entirely inappropriate under these circumstances and should be denied.

## II. STATEMENT OF FACTS TO BE CONSTRUED IN FAVOR OF THE PLAINTIFF

A.  ROBIN ATWELL/HARASSMENT CLAIMS

1. Plaintiff was hired by the Defendant Smart on August 25, 2005. She began her employment as an assembly technician. (Plt. Depo. at 54:8-10, 55:14-21).

2. On November 14, 2005, the Plaintiff became a safety assistant in the safety department which required her to transfer to a different part of the plant. Her new office was located in the office of the safety director, Rance Maddox. Her safety assistant position required her to report to the safety manager, Rance Maddox. (Plt. Depo. at 73:7-13, 74:4-6);(Plt. EEOC Charge Pg. 2).

3. Rance Maddox let it be known to the people in his department that he was a womanizer, ladies man. During her employment in the safety department, Rance Maddox would ask the Plaintiff where she was eating lunch, and she would reply that she had other plans. Regardless, Mr. Maddox would show up wherever she was eating. He asked her to eat with him at places called the Ranch House and the Chicken Shack, and this occurred on a daily basis. She always declined to eat with him. Rance Maddox would also overhear her telling others where she was going to lunch, and he would either ride through the parking lot where she could see him or come to eat at the same establishment. On one occasion, he came to the Chicken Shack where she was eating and sat down next to her. Although there are not many places to eat right around the plant, there are enough that Mr. Maddox shouldn't just happen to show up where she is eating every day. (Plt. Depo. at 125:1-2, 167:1-8, 168:1-20, 169:6-13, 169:19-23, 170:1-16).

4. On one occasion, while the Plaintiff was working at her computer, Rance Maddox

came up from behind her and began rubbing her shoulders. As she began to stand up, he reached down and touched her in the area of her breasts. He laughed about it after he did it. Rance Maddox has also rubbed his shoulder against the Plaintiff's breasts on previous occasions. On her birthday, November 16, 2005, Rance Maddox hugged the Plaintiff in a manner that was inappropriately tight and long. The hug lasted from 8 to 10 seconds. On numerous occasions, Rance Maddox would rub and bump against the Plaintiff and hold her hands. (Plt. Depo. at 172:18-21, 173:1-23, 174:1-18, 175:2-3, 176:11-17, 177:2-15).

     5.     During work, Rance Maddox would touch and rub the Plaintiff's arms. He would try to hold hands with her while talking to her and would try to pull her close to him while sitting on the edge of his desk. On probably 20 occasions, Rance Maddox would wrap his arm around her arm or come up from behind her and rub her arms. And, on another occasion, he invited the Plaintiff to go out for drinks. He indicated that he would buy the drinks and told her not to worry about driving if she got "tore up" because they could get a room. On another occasion, Rance Maddox made comments to the Plaintiff that it was impossible for men to be monogamous in their sexual relations. (Plt. Depo. at 178:22-23, 179:1-17, 182:9-22, 189:7-16, 191:6-18).

     6.     During her employment in the safety department, Rance Maddox would rub his pelvis area against the Plaintiff's buttocks and shoulder several times a week. The first time this happened, the Plaintiff was filing, and he came behind her and acted like he was trying to squeeze through a small space, but there was nothing behind him to prevent him from getting past the Plaintiff. This lasted approximately 3 seconds. The Plaintiff acted startled. Rance Maddox laughed and did not apologize. (Plt. Depo. at 193:12-16, 194:11-23, 195:1-23).

     7.     Rance Maddox called the Plaintiff at home approximately 15 to 20 times. During

these calls, he would ask her what she was doing and attempt to make small talk. Sometimes, he would ask her questions related to work, but then he would try to have a conversation. The Plaintiff considered it inappropriate that he would call her late at night when they were both married and they had just seen each other at work. During these calls, he always wanted to know what she was doing, where she was, and what she was doing later. She could tell that during some of these calls, Rance Maddox was intoxicated. (Plt. Depo. at 207:7-15, 208:5-19, 209:9-16, 211:1-8, 212:1-10, 213:17-18).

8. On several occasions, between December 2005 and January 2006, Rance Maddox asked the Plaintiff if her breasts were real and asked what they felt like. The Plaintiff did not respond but walked out of the room. She did discuss her breasts implants with other girls at work because they were interested in having the breast implant surgery. (Plt. Depo. at 214:14-21, 215:14-21, 216:2-7).

9. Rance Maddox often commented to the Plaintiff and other girls at work that "I've got a real man for you". He made this comment specifically to the Plaintiff on about 5 or 6 occasions. He would say this in conjunction with the statement "just work with me baby". Rance Maddox made it very clear to the Plaintiff that if she didn't "work with him" in the way that he talked about that she would not be in this office any more. When the Plaintiff asked Rance Maddox about getting a raise, he stated "you've got to work with me and I'll get you what you want, I'll get you what you need". While telling the Plaintiff that she had to work with him, and that he would get her what she needed, he would rub her. She felt that this was a physical reference to sex. She believes that Rance Maddox told her "you've got to work with me" at least 10 to 15 times. He would also tell her "I'll take care of you, if you'll work with me" as he

rubbed on her. (Plt. Depo. at 218:21-23, 219:1-21, 220:1-20, 222:1-22, 229:10-22, 230:10-23, 232:7-13).

10. Rance Maddox made references to the Plaintiff about his sex life with his wife. He also told the Plaintiff that his wife was a "fucking bitch". Rance Maddox's wife called the Plaintiff's home on one occasion and wanted to know why her telephone number was in his cell phone, and why he had been calling it so much. (Plt. Depo. at. 237:4-6, 240:6-14, 240:19-23).

11. After the Plaintiff met with with Gary Sport, the general manager, about Rance Maddox, Rance became hostile towards her. It went from sexual harassment to "hostile work environment". He began throwing stuff, kicking doors shut, slamming phones down and snatching papers out of the Plaintiff's hands. She felt that reporting Rance Maddox to Gary Sport "backfired" on her. (Plt. Depo. at 271:14-23, 272:1-6).

12. The Plaintiff was raped in 1997 and bore a child from that rape. She feels like the rape made everything that was going on at Smart harder for her. (Plt. Depo. at 291:12-14, 292:23, 293:1-15).

B.   **SMART ON NOTICE OF SEXUAL HARASSMENT**

13. On January 18, 2006, the Plaintiff reported Rance Maddox's conduct to Gary Sport, the general manager of the plant. In that meeting, Gary Sport suggested that the Plaintiff write Rance Maddox a letter containing her problems. She typed a letter to Rance Maddox and believes that she gave Gary Sport a copy of the letter. The letter contained complaints about jokes about women, his invasion of her space, and his statements that if she did not "play along with him" or he would not "play nice". (Plt. EEOC Charge Pg. 3) (Plt. Depo. at 130:8-22, 131:3-14).

14. Prior to the January 18, 2006 meeting with Gary Sport, the Plaintiff, during casual conversations with Gary Sport, had informed him that she was "uncomfortable" working around Rance Maddox. Prior to the January 18, 2006 meeting, the Plaintiff reported harassment from Rance Maddox to Fran Hughes in the Human Resources Department. She asked Fran Hughes for a form to complete and told her specifically what she intended to put in the form. She was informed that the company did not have forms, so she wrote out her complaints. She later typed the letter and gave it to Fran Hughes. She included a copy for Gary Sport to receive. (Plt. Depo. at 183:19-23, 184:1-23, 186:15-23, 187:1-19).

15. A rough draft of the letter provided to Fran Hughes was authenticated and marked as Exhibit 17 to the Plaintiff's deposition and was dated 2/2/2006. The letter specifically references the "sexual harassment situation with Rance Maddox". The letter further states reference to earlier complaints about Rance Maddox and states that Rance Maddox has made the Plaintiff's work environment "hostile". (Plt. Letter dated 2/2/206, Pg. 1).

16. The Plaintiff sometimes wrote entries on her calendar, and that calendar was authenticated and marked as Exhibit 14 to the Plaintiff's deposition. The calendar references a meeting on January 18, 2006 with Gary Sport about Rance Maddox. It shows the Plaintiff requested a transfer. The calendar also references a meeting with Ruth Ryan, the employee relations manager for Smart, on February 1, 2006. The entry states the Plaintiff requested a transfer and "cried". (Plt. Calendar Pgs. 1&2).

17. The Plaintiff spoke with Ruth Ryan in private prior to February 1, 2006. Also, the Plaintiff met with Gary Sport in the cafeteria and told him that Rance Maddox had been coming on to her, that she was uncomfortable with it, and that he calls her all the time and wants her to

go out and eat with him.  (Plt. Depo. at 139:1-3, 171:17-21, 172:6-14).

18.    Plaintiff reported to Ruth Ryan in two separate meetings that Rance Maddox would try to hold her hands.  In a meeting with the director of the plant, Mr. Kwan, on January 30, 2005, the Plaintiff informed him that Rance Maddox had been calling her all hours of the day and night, showing up where she was eating, asking her out, touching her inappropriately, telling her to just to work with him.  The Plaintiff had this meeting because her previous request from Human Resources had not done any good.  (Plt. Depo. at 180:22-23, 181:1-11, 196:15-21, 197:5-14, 198:15-22).

19.    Plaintiff met with Ruth Ryan on February 1, 2006 and met with her again the following day, February 2, 2006.  She met with Ruth Ryan for over an hour and told her everything that was going on with Rance including that he made her uncomfortable, comments he had made to her and the way that he had touched her inappropriately.  She informed Ruth Ryan that Rance's actions were causing her problems at home.  (Plt. Depo. at 204:1-23, 205:13-18).

20.    On January 28, 2006, the Plaintiff marked on her calendar that "Cathy quit".  Ruth Ryan, at that time, found a note on her desk from Cathy Caldwell stating that Mr. Maddox had kissed her.  Around February 8th or 9th, Cathy informed the Plaintiff that she had quit because Rance kissed her on the mouth.  (Plt. Depo. at 263:22-23, 264:1-17, 266:11-16)(Ryan Depo. at 48:1-16).

C.    **SMART'S FAILURE TO ADDRESS RANCE MADDOX ISSUES**

21.    The Plaintiff first met with Gary Sport to discuss Mr. Maddox's conduct on January 18, 2006.  Previously, during casual conversations, she had informed Mr. Sport that she

was uncomfortable working around Mr. Maddox. Also, in the middle of January 2005, the Plaintiff reported Mr. Maddox's conduct to Fran Hughes in the Human Resources Department. And, she met with Ruth Ryan about Mr. Maddox on February 1, 2006 and February 2, 2006. Despite these meetings and her request for transfers, she remained in the safety office with Rance Maddox for the remainder of her employment, and the only knowledge she has of any counseling or reprimand is that Rance Maddox became hostile towards her after her January 18, 2006 meeting with Gary Sport. (Plt. EEOC Charge Pg. 3-4) (Plt. Depo. at 130:8-22, 131:3-14, 183:19-23, 184:1-23, 186:15-23, 187:1-19).

### D. TRANSFER

22. Although the Plaintiff had initially requested a transfer on January 18, 2006, the Defendant Smart did not address the request until February 7, 2006, the last day of the Plaintiff's employment. Ruth Ryan offered to move the Plaintiff out into the plant; however, she would have to see Rance Maddox every day and get her safety equipment from him. The Plaintiff requested from her that she be moved to a department that had nothing to do with safety. (Plt. Depo. at 199:3-9, 200:17-23).

23. On her last day of employment, Ruth Ryan informed her they were going to transfer her into the plant. The Plaintiff told her that would not work. Shortly after this, she saw Rance Maddox, and he told her that he was writing her up for unauthorized overtime. She became very upset, and Ruth Ryan then told her that she needed to go to the doctor's office, which she did. She did not return to work. (Plt. Depo. at 279:1-23, 280:3-13).

### E. CHANGES IN CONDITIONS OF WORK

24. While in the safety department, the Plaintiff was supposed to receive a raise to

$9.50 after 30 days.  Rance Maddox had to participate in the request, and it was never turned in because the Plaintiff would not "work with him".  In order to get the 30 day raise, Rance Maddox was supposed to sign the request for her raise.  She felt as though he wanted certain favors in order for him to sign it, so she tore it up and threw it in the garbage.  She never requested her raise.  (Plt. Depo. at 124:8-13, 163:6-18).

25.     On January 30, 2006, Rance Maddox terminated the Plaintiff "from within the safety department".  She understood this to mean her employment with Smart was being terminated.  (January 30, 2006 Rance Maddox letter, Pg. 2) (Plt. Depo. at 227:5-23, 228:5-6).

### III.  SUMMARY JUDGMENT STANDARD

26.     Pursuant to the Defendant's Motion, this Court's standard of review is de novo, and the evidence and all factual inferences therefrom are viewed in a light most favorable to the Plaintiff.  Sanders V. v. LULL Intern. Inc., 411 F.3d 1266, 1269 (11th Cir. 2005).  Obviously, Summary Judgment is inappropriate where there are genuine issues as to any material fact, and the Defendant is not entitled to a Summary Judgment under those circumstances.  Genuine issues of material fact exist where a jury could return a verdict for the Plaintiff, and in examining the record, this Court shall view all the evidence in a light most favorable to the Plaintiff.  Wilson v. B/E Aerospace Inc., 376 F.3d 1079, 1085 (11th Cir. 2004).

### IV.  ARGUMENT

A.  **SUMMARY JUDGEMENT IS IMPROPER AS TO THE PLAINTIFF'S SEXUAL HARASSMENT CLAIMS**

27.     There are clearly numerous issues of fact in this case that preclude the Defendant's request for a Summary Judgment ruling.  Throughout the factual section of this

Brief, the Plaintiff has presented dozens of instances of sexual harassment, numerous instances of the Defendant's knowledge and failure to act and three very specific instances of tangible employment action. Moreover, the Plaintiff presents emphatic evidence that her work environment became hostile subsequent to reporting Rance Maddox for sexual harassment.

### 1. Sexual Harassment/Strict Liability

28. There are two undisputed glaring circumstances of this case that unquestionably precludes the Defendant's Motion for Summary Judgment. (1) Rance Maddox was the Plaintiff's supervisor, and (2) he took tangible employment action against her as a result of the sexual harassment. Under these circumstances, the Defendant Smart is strictly liable to the Plaintiff for the sexual harassment claim by her. Johnson v. Booker T. Wash. Broadcasting Serv., 234 F. 3d 501, 509 (11th Cir. 2000). It is undisputed that Rance Maddox was the safety supervisor and the supervisor of the Plaintiff. He leveled tangible employment action against her by (1) failing to sign her request for a 30 day raise; (2) terminating her employment from the safety department and; (3) creating an untenable work schedule for her. Tangible employment action taken by Rance Maddox here becomes the act of Smart, the employer. When Rance Maddox, the harasser, made tangible employment decisions that adversely affected the Plaintiff, he created an inference that there is a causal link between his motivations and the employment decisions. In fact, the Plaintiff establishes her entire case by showing she was sexually harassed by Rance Maddox. Johnson, 234 F.3d at 510. Consequently, the Defendant's Summary Judgment argument ends at this point.

29. However, if there are any questions as to whether the Plaintiff's claims demonstrate sexual harassment, those questions are also put to rest at this point. A comparison

of the Plaintiff's claims of harassment in <u>Johnson</u> leaves no question that sexual harassment in this case meets the fourth prong test for sexual harassment. Harasser repeatedly commenting that victim had a sexy voice, winking at the victim, tightening pants around penis, massaging shoulders, rubbing body parts against the victim and making inappropriate comments about sex qualify as harassment under the four pronged test. <u>Johnson</u>, 234 F.3d at 506.

30.   Here, the Plaintiff claims that Rance Maddox rubbed his pelvic area against the Plaintiff's buttocks and shoulders, asked her what her breasts felt like, tried to hold her hands, rubbed her legs, touched the top of her breasts area and told her he would take care of her if she would just work with him. Obviously, the harassing conduct in <u>Johnson</u> and this case are starkly similar. As such, the Defendant's Motion for Summary Judgment is due to be denied.

### 2.   Vicarious Liability

31.   If this honorable Court is not convinced that Summary Judgment is improper based upon strict liability, the Motion is improper pursuant to the principles of vicarious liability. In order to prove sexual harassment under Title VII, the Plaintiff must show

> (1) that she belongs to a protected group; (2) that she has been subjected to unwelcome sexual harassment; (3) that the harassment was based on her sex; (4) that the harassment was sufficiently severe or pervasive to all of the terms and conditions of employment and create a discriminatorily abusive working environment and (5) that a basis for holding the employer liable exist. <u>Hulsey v. Pride Restaurants L.L.C.</u>, 367 F.3d 1238, 1244 (11th Cir. 2004).

32.   While there is no question that the Plaintiff meets the first three prongs of this test, the evidence presented in the factual section of this Brief no doubt satisfies the fourth and fifth prong. Where the Plaintiff's refusal to submit to Rance Maddox's demands that she "work with him" results in her termination from the safety department and his refusal to sign off on her

raise, she has clearly suffered a change in terms and conditions of her employment. Hulsey, 367 F.3d at 1245.

33.     Secondly, the Plaintiff's claims meet the test because she presents evidence of harassment sufficiently severe and pervasive to effectively result in changes to the terms and condition of her employment. This is commonly referred to as "hostile environment". Id. Plaintiff presents evidence that she was denied a raise by her supervisor, terminated from the safety department, given untenable weekend work hours and forced to endure Rance Maddox's hostile and threatening attitude towards her. There is certainly a genuine issue of material fact about whether Rance Maddox's behavior altered the terms and conditions of the Plaintiff's employment. Consequently, the Defendant's Motion is due to be denied.

### 3.     Smart Has No Affirmative Defense

34.     Again, if the Court is not convinced that strict liability applies in this case, the Defendant Smart can only escape vicarious liability by demonstrating that it took reasonable steps to prevent sexual harassment and stop the harassing conduct promptly once it was brought to its attention, and that the Plaintiff unreasonably failed to avoid the harassment or use remedial opportunities made available by the Defendant. Dee's v. Johnson Controls World Serv. Inc., 168 F.3d 417, 422 (11th Cir. 1999).

35.     The Plaintiff first reported Rance Maddox's conduct to supervisory personnel in the middle of January 2005. She made several reports of the conduct to other supervisory personnel during the next several weeks of her employment. However, as described in the factual section of this Brief, the harassment continued unfettered until the last day of her employment. Also, when Rance Maddox was apparently made aware that she had reported him,

he became hostile and threatening towards her and altered her work schedule, non of which was prevented by her employer. Not until the last day of her employment, February 7, 2006 did the Defendant offer to reassign her to a job outside of the safety office. But, it is undisputed that the position they offered would still require her to see Rance Maddox and deal with him on a daily basis. The Defendant never offered the Plaintiff a reassignment to a position where she would not have interaction with Rance Maddox. Thus, the Defendant in this case certainly did not take reasonable steps to prevent the Plaintiff's unfortunate situation.

36.    With regard to the Plaintiff utilizing the remedial measures provided by the employer, she testified that she first went to the Human Resources Department during the middle of January 2005. She asked to complete a form to complain about sexual harassment from Rance Maddox and was told that there were not any forms. She testified that she verbally complained about Mr. Maddox to an individual in the Human Resources Department and then completed a letter about that harassment on February 2, 2006. She also testified that she reported Mr. Maddox's conduct to the plant manager on more than one occasion and the plant director at the end of January 2006. Consequently, based upon the Plaintiff's testimony, she reported Rance Maddox's conduct to the Human Resources Department, the plant manager and the plant director, non of which provided her any relief whatsoever.

## CONCLUSION

The Plaintiff has provided this honorable Court with more than sufficient evidence to warrant the denial of the Defendant's Motion for Summary Judgment. Based upon the evidence and case law provided herein, the Plaintiff respectfully request that the Defendant's Motion for Summary Judgment is denied.

/s/ Richard F. Horsley
**Richard F. Horsley   HOR023**
**Attorney for Plaintiff**

**OF COUNSEL:**
**Richard F. Horsley**
**Lindsey O. Hill**
**KING, HORSLEY & LYONS, LLC**
**1 Metroplex, Suite 280**
**Birmingham, Alabama 35209**
**Telephone: (205) 871-1310**
**Facsimile:  (205) 871-1370**
**Email:  rfhala@cs.com**

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing Notice on all counsel of records listed below by placing a copy of same in the United States Mail, first class, postage pre-paid on this the ____ day of November, 2007.

**Kathryn M Willis**
**BURR & FORMAN LLP**
**420 North 20th Street, Suite 3100**
**Birmingham, Alabama 35203**
**Telephone: (205) 251-3000**
**Facsimile: (205) 485-5100**

**Thomas F. Kelly, Jr., P.C.**
**17 Court Square**
**P. O. Box 605**
**Clayton, Alabama 36016**

/s/ Richard F. Horsley
**OF COUNSEL**