# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| **ROBIN ATWELL, an individual,** | ) |
| Plaintiff, | ) ) ) |
| v. | ) )  **CIVIL ACTION NO. CV-06-1089-** ) **MEF** |
| **SMART ALABAMA, LLC, a legal entity,** | ) ) |
| Defendant. | ) ) |

## DEFENDANT SMART ALABAMA, LLC'S REPLY BRIEF

Defendant SMART Alabama, LLC ("SMART" or "Defendant") submits the following Reply Brief to Plaintiff's Memorandum Brief In Response to the Defendant SMART Alabama, LLC's Motion for Summary Judgment (Doc. 23):

I. **RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS TO BE CONSTRUED IN FAVOR OF THE PLAINTIFF.**[1]

1. Admitted

2. Admitted.

3. Admitted with clarification.  The terms "womanizer" and "ladies" man were used by Plaintiff to describe Rance Maddox during her deposition –

---

[1] Plaintiff does not explicitly set out which, if any, of SMART's Undisputed Facts which she contends are disputed.  However, assuming discrepancies in Plaintiff's Statement of Facts which differ from SMART's Undisputed Facts are meant to indicate that certain of SMART's facts are disputed, the remainder are admitted for summary judgment purposes as they are neither admitted nor disputed (¶¶ 1-58, 60-84, 89-99, 101, 103-15).

1622600 v1

there is no evidence that he, himself, let it be known that was a "womanizer" or "ladies man." (Doc. 18, Tab A, Pl. Depo. at 125:1-2.)

4. Admitted with clarification. It is Plaintiff who characterizes the hug as "inappropriately tight and long."

5-10. Admitted as plaintiff's testimony.

11. Admitted that Plaintiff contends that she met with Gary Sport. Disputed to the extent Plaintiff declares that after she met with Sport, Maddox "became hostile towards her." There is no support for such a statement in the record.

12. Admitted.

13. Admitted in part and disputed in part. Plaintiff does not know what she told Sport in the cafeteria. (Doc. 18, Tab A, Pl. Depo. at 181:14-20; 218:15-20 & DX 14). The letter did not contain specific allegations about invasion of space. (Doc. 18, Tab A, Pl. Depo. at 128:20-132:2 & DX 11). She does not know if she gave Sport a copy of the letter, and Sport never received one. (Doc. 18, Tab A, Pl. Depo. at 130:8-22); (Doc. 18, Tab C, Sport. Aff. ¶23).

14. Disputed that Plaintiff informed Gary Sport of any "uncomfortable" behavior with Rance Maddox prior to January 18, 2006. The pages cited by Plaintiff do not support the contention made in the first sentence of this paragraph. Admitted that Plaintiff typed a letter for Fran Hughes, but denied to the extent

Plaintiff characterizes Fran Hughes as an employee working in the "Human Resources Department" or that she made her aware of specific allegations. Fran Hughes, who worked in Administration and assisted Human Resources with hiring functions, did not carry out human resource functions in late 2005 and early 2006. (Doc. 18, Tab A, Plt. Depo. at 187:16-188:11; Tab O, Hughes Aff. at ¶¶ 3, 5, 7.)

15. Admitted with clarification. Plaintiff does not know what happened to the typed complaint or whether Hughes or Sport ever received it. (Doc. 18, Tab A, Plt. Depo. at 186:15-188:11 & DX 17; Tab C, Sport Aff. ¶26; Tab O, Hughes Aff. ¶7).

16. Admitted as plaintiff's testimony.

17. Disputed. Cites do not support proposed facts.

18. Admitted that plaintiff met with Kwon on the day she found her "termination" letter dated January 30, 2006.

19-20. Admitted as plaintiff's testimony.

21. Disputed. The citations to the record provided by Plaintiff do not support her contention that "during casual conversations, she had informed Mr. Sport that she was uncomfortable working around Mr. Maddox." Also, as stated above in response to paragraph 14, Fran Hughes did not carry out the functions of a human resources employee during the relevant time period. (Doc. 18, Tab O, Hughes Aff. at ¶¶ 3, 5, 7.) Further, it is disputed that Plaintiff "remained in the

safety office with Rance Maddox for the remainder of her employment," since Maddox was actually on medical leave during the last half of January 2006, and he resigned his employment with SMART within three weeks of Plaintiff's failure to return to work. (See Doc. 17, p. 19 at ¶ 98.) Maddox was issued a counseling memorandum after plaintiff reported he was a "grouch." (Doc. 17, Tab A, Plt. Depo. at 258:1-259:23 & DX18).

22. Disputed. The evidence cited does not support the conclusory statement that SMART "did not address [Plaintiff's] request [for a transfer] until February 7, 2006." Additionally, as noted by SMART in its Undisputed Facts, it is simply not true that Plaintiff would have come in contact with Maddox on a daily basis. The proposed transfer would have placed Plaintiff approximately two or three hundred feet from Maddox in the Safety Office, where she would not have had one-on-one contact with him, and she would not have reported to him. (Doc. 18, Tab A, Pl. Depo. at 206:6-207:6; 274:11-275:14; Tab B, Ryan Aff. ¶ 20; Tab C, Sport Aff. at ¶ 28; Tab E, Sport Depo. at 85:4-15.)

23. Admitted as plaintiff's testimony.

24. Disputed. Plaintiff's own deposition testimony indicates that she was not eligible for a raise until the expiration of 90, not 30, days. (Doc. 18, Tab A, Pl. Depo. at 161:13-165:10.) Furthermore, there is no support for the assertion that a raise was not given because Plaintiff would not "work with" Rance Maddox.

25. Disputed. There is no evidence in the record which indicates that Rance Maddox had the authority, either actual or apparent, to terminate Plaintiff from either the Safety Office or SMART in general. (Doc. 18, Tab A, Pl. Depo. at 152:17-154:3; Tab C, Sport Aff. ¶20; Tab Q, Maddox Aff. ¶14).

## II.   ARGUMENT

### A.   The Material Facts in this Case Remain Undisputed.

Plaintiff's attempts to create a genuine issue of material fact where none exists by distorting record evidence are insufficient to defeat SMART's Motion for Summary Judgment. Plaintiff's assertion that she has presented dozens of instances of sexual harassment, numerous instances of SMART's knowledge and failure to act, and three specific instances of tangible employment actions is simply not supported by the evidence. (Doc. 23.) Plaintiff cannot now change what she told SMART. She cannot contradict her own testimony that she is not certain what she reported to Sport on or about January 18, 2006.[2] She cannot claim that Hughes, who was not performing Human Resources functions, and Sport had knowledge of Maddox's alleged harassment when she is not certain they received her memorandum dated February 2, 2006.[3] Nor can she contend that SMART failed to take appropriate action when, after her request, it offered to transfer her from the

---

[2] Compare Doc. 23 at pp. 5-6 with Doc. 18, Tab A, Pl. Depo. at 181:14-20; 218:15-20.

[3] Compare Doc. 23 at p. 6 with Doc. 18, Tab A, Pl. Depo. at 182:4-188:11 & DX 17.

Safety Office to a position in which she admits she would not have one-on-one contact with Maddox.[4]

Plaintiff cannot now alter her own testimony to assert that Maddox did not approve a 90-day raise because of an alleged failure to respond to his advances.[5] She cannot claim her work schedule as an adverse employment action where she admitted that everyone in the Safety Office was subject to such schedule.[6] She cannot contend that she suffered a tangible employment action via a termination that admittedly never took place.[7]

Casting aside plaintiff's efforts to distort her own testimony and record evidence, the following facts remain undisputed: At all relevant times, SMART had in place a harassment policy of which Plaintiff and Maddox were aware. (Doc. 17, Def. Facts ¶¶9-12, 14-16). Harassment was to be reported to an employee's immediate supervisor or Human Resources. (Doc. 17, Def. Facts, ¶9). Although plaintiff now contends that Maddox's harassing conduct began as early as November 2005, she failed to make any attempts to report the conduct until

---

[4] Compare Doc. 23 at p. 8 with Doc. 18, Tab A, Pl. Depo. at 206:6-207:6; 274:11-275:14.

[5] Compare Doc. 23 at pp. 8-9, 10 with Doc. 18, Tab A, Pl. Depo. at 71:8-10; 164:13-165:10.

[6] Compare Doc. 23 at pp. 9-10 with Doc. 18, Tab A, Pl. Depo. at 107:2-108:1; 110:10-12 & DX 8.

[7] Compare Doc. 23 at pp. 9-10 with Doc. 18, Tab A, Pl. Depo. at 152:2-154:20 & DX15.

January 2006. (Doc. 17, Def. Facts, ¶88). She is not certain what she reported to Sport or Hughes, who was not Human Resources. (Doc. 17, Def. Facts, ¶¶66-67,89). After making a specific report to Ruth Ryan on February 1 and 2, 2006, plaintiff was offered a transfer away from Maddox, which she refused. (Doc. 17, Def. Facts, ¶¶95, 97).

### B.     Plaintiff Has Failed to Establish a Tangible Employment Action.

Plaintiff contends, without any evidentiary support, that SMART is strictly liable for Maddox's alleged conduct because Maddox "leveled" the following tangible employment actions against her: (1) failing to sign her request for a 30-day raise; (2) terminating her employment from the Safety Office; and (3) creating an "untenable" work schedule for her. (Doc. 23, p. 10). Plaintiff completely ignores her failure to include reference to any tangible employment action in her EEOC Charge, which precludes her from asserting such a claim now. See Minix v. Jeld-Wen, Inc., No. 06-16094, 2007 WL 1828259 (11th Cir. June 27, 2007).

Even assuming she could assert such a claim at this stage, the alleged actions "leveled" by Maddox do not constitute "tangible aspects of the employee's compensation, or terms, conditions, or privileges of employment." Johnson v. Booker T. Washington Broadcasting Svc., Inc., 234 F.3d 501, 508 (11th Cir. 2000). Likewise, she has failed to show a "causal link between the tangible employment action and the incident(s) of sexual harassment." Burlington Indus.,

Inc. v. Ellerth, 524 U.S. 742, 761-62 (1998).

Plaintiff's own testimony precludes her from asserting that Maddox's alleged refusal to sign a form for a raise is not a tangible employment action. She admits that she would not have been eligible for a raise in her new position in the Safety Office until the expiration of ninety days from November 2005. (Doc. 18, Tab A, Pl. Depo. at 161:13-165:10). She acknowledges that she was told her pay "would stay the same" when she moved from an assembly position on third shift (which warranted a pay premium) to a position in the Safety Office. Id. at 162:23. She did not speak to anyone in Human Resources about the raise to which she now contends she was entitled. Id. at 163:21-164:5. She has failed to point to any evidence whatsoever that Maddox's alleged refusal to sign the premature raise request form was causally linked to her refusal of any sexual advances by him.

Plaintiff cannot rely upon the January 30, 2006 "termination" letter she "found" as a tangible employment action, since, at best, the letter reflects only an unfulfilled threat. See Ellerth, 524 U.S. at 754. Plaintiff was never given the letter, which had not been authorized by Human Resources and which made no mention of her employment with SMART being terminated. (Doc. 18, Tab A, Pl. Depo. at 152:2-154:10, 226:13-228:22 & DX 15; Tab C, Sport Aff. ¶20 & Att. D; Tab K, Maddox Aff. ¶14). She admits that no one at SMART told her she was terminated or that she should resign. (Doc. 18, Tab A, Pl. Depo. at 62:23-65:14-

16; 152:3-153:6; 158:19-159:1; Tab C, Sport Aff. ¶20; Tab K, Maddox Aff. ¶14). She has offered no evidence that the unsigned, undelivered memorandum was in some way connected to the alleged advances by Maddox or that Maddox had the authority to take any action on the contents of the letter. (See Doc. 17, p. 29). Plaintiff's subjective feeling that she was terminated simply based on her discovery of the letter is insufficient to support an allegation of adverse employment action, particularly in light of her assertion that she continued to work in the Safety Office until the last day of her employment at SMART, February 7, 2006. (Doc. 23, p. 17).

Plaintiff's assertion that SMART is strictly liable because Maddox created "an untenable work schedule for her" is baseless and unsupported by the evidence. Plaintiff herself admits that every employee in the Safety Office was expected to work weekends. (Doc. 18, Tab A, Pl. Depo. at 107:21-108:1, 110). She offered that the Safety Office employees tried to implement a rotation schedule by which employee would have a weekend off. Id. at 110:14-23. When plaintiff reported to Gary Sport that she was scheduled to work third shift on a Sunday and then first shift on Monday morning, the problem was resolved. Id. at 112. There is no evidence that Plaintiff worked a different schedule than any other employee in the Safety Office and no evidence that her schedule was tied to any alleged advances made by Maddox. A work schedule comparable to every other employee in the

Safety Office cannot form the basis of a claim for strict liability premised upon adverse tangible employment actions.

### C. There Was No Hostile Work Environment.

Without adverse tangible employment action, Plaintiff cannot hold SMART strictly liable for any of Maddox's alleged conduct. (See Doc. 17, pp. 28-29.) However, Plaintiff also argues that questions regarding whether her claims demonstrate sexual harassment are "put to rest at this point." She compares the facts of Johnson v. Booker T. Washington Broadcasting Serv., Inc., 234 F.3d 501, 509 (11th Cir. 2000), to the facts of her case and summarily concludes that they "are starkly similar." (Doc. 23, pp. 10-11.) In Johnson, the plaintiff alleged that the harasser told her she had a sexy voice, called out her name and winked at her, called out her name and pulled his pants up in an obscene manner (revealing an imprint of his private parts), called out her name and looked her "up and down," told her as long as he liked her she didn't have to worry about her job, repeatedly attempted to massage her shoulders against her wishes, stuck his tongue out at her in an obscene manner, inappropriately rubbed his body parts against her, asked her why a person with a body like hers would want to cover it up, commented that he could "pull [Johnson] up" any time (which she interpreted to be a sexual comment), got close to her face as if to kiss her, commented that she "really knocked him off his feet," stated that he had to stay on his side of the room,

commented inappropriately about sex and questioned the plaintiff about her own sex life, and asked her if she ever got lonely. Id. at 506. The Eleventh Circuit held that the plaintiff in Johnson was subjected to harassing conduct because it was frequent (fifteen instances in four months), severe, physically threatening and humiliating, and it interfered with the plaintiff's job performance. Id. at 509.

In the instant case, SMART has already discussed Plaintiff's allegations of harassing conduct by Maddox at length in its Brief in support of its Motion for Summary Judgment (Doc. 17, pp. 24-27). At least some of the conduct about which Plaintiff now complains was not based on sex, as she admits that Maddox's calls to her were not sexual in nature and that references to his wife as a "fucking bitch" were not based on Plaintiff's gender.[8] Id. at 17; see Oncale v. Sundowner Offshore Svcs., Inc., 523 U.S. 75, 80 (1998); Henson v. City of Dundee, 682 F.2d 897, 904 (11th Cir. 1998).

As stated in SMART's brief, the remainder of Plaintiff's allegations do not amount to conduct which is sufficiently severe or pervasive to cross the Mendoza v. Borden, Inc., 195 F.3d 1238 (11th Cir. 1999) line. (Doc. 17, p. 26). The conduct alleged by Plaintiff was not frequent considering all of the daily opportunities she had to interact with Maddox in the Safety Office and the fact that she specifically

---

[8] Plaintiff cannot, as she appears to assert, rely upon Maddox's allegedly throwing things, kicking doors shut, slamming phones down, and snatching papers as hostile work environment when she has offered no evidence that these actions were based on her sex. See Oncale, 523 U.S. at 80.

identifies only one touching of her breast area, one birthday hug, one comment regarding monogamy, five or six comments regarding "I've got a real man for you," and one inquiry about her breast implants. Id. at 26-27. Finally, there is absolutely no evidence that any of Maddox's alleged conduct interfered with Plaintiff's performance of her duties in the Safety Office, as she continued to perform her job after Maddox's alleged conduct. Id.; see also Davis v. Potter, 190 Fed. Appx. 874, 877 (11th Cir. 2006). For these reasons, the facts of this case are easily distinguishable from those in Johnson, and Maddox's conduct clearly did not rise to the level of creating a hostile work environment.

### D.   SMART Is Not Vicariously Liable.

Plaintiff again relies upon conclusory statements, unsupported by citations to the record, to attempt to demonstrate that SMART should be held vicariously liable for Maddox's alleged inappropriate conduct. (Doc. 23, pp. 11-13.) Plaintiff cites Hulsey v. Pride Restaurants, LLC, 367 F.3d 1238 (11th Cir. 2004), for the proposition that sexual harassment in the workplace may alter the terms and conditions of a plaintiff's employment where the employee refuses to submit to a supervisor's sexual demands which resulted in tangible employment action being taken against her. Id. at 1245. However, it is insufficient for Plaintiff to simply cite to precedent and then make the conclusory statement that "Plaintiff's refusal to submit to Rance Maddox's demands that she 'work with him' result[ed] in her

termination from the safety department and his refusal to sign off on her raise…." (Doc. 23, p. 11.)  Plaintiff cannot merely state that her allegations meet the *prima facie* case requirement for a claim of sexual harassment hostile work environment in an effort to avoid summary judgment being granted against her.  To support her claim for vicarious liability for a hostile work environment, Plaintiff again points to the fact that she claims she was denied a raise, terminated from the safety department, and given untenable work hours.  (Doc. 23, p. 12.)  As explained in the previous section,  each of these three allegations rests upon Plaintiff's distorted interpretation of the evidence before this Court, and are therefore due to fail.

      E.    **SMART Is Entitled to the <u>Faragher-Ellerth</u> Affirmative Defense.**

Plaintiff has failed to rebut SMART's showing: (1) that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) that plaintiff "unreasonably failed to take advantage of any preventive or corrective opportunities [it] provided."  <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775 (1998); <u>see also</u> <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742 (1998).  Plaintiff has not even attempted to create a genuine issue of material fact with respect to the first requirement.  It remains undisputed that SMART exercised reasonable care to prevent sexual harassment by promulgating and disseminating an anti-harassment policy that provided avenues through which employees may complain about harassing conduct.  (<u>See</u> Doc. 17, p. 32.)  Plaintiff does not dispute

the fact that she was aware of the policy at the time of her employment with SMART, and she understood that she must report any harassment which she experienced. Id. at 33.

Despite Plaintiff's distortion of record evidence, it remains undisputed that Plaintiff failed to take advantage of preventive or corrective opportunities available to her through SMART. According to Plaintiff's response brief, she waited until the middle of January 2006[9] to first report Rance Maddox's alleged misconduct, even though she contends that it occurred as far back as November 2005. (Doc. 23, p. 12.) Plaintiff's delay in reporting any conduct for nearly two-and-a-half months (from November 2005 to January 2006), evidences a failure on her part to take advantage of the corrective procedures implemented by SMART. See, e.g., Walton v. Johnson & Johnson Svcs., Inc., 347 F.3d 1272, 1289 (holding that employee unreasonably failed to take advantage of anti-harassment policy when she waited 3 months to report harassment); Taylor v. CSX Transp., 418 F.Supp.2d 1284 (M.D. Ala. 2006) (holding that employee's failure to timely report established second element of affirmative defense).

Plaintiff also offers that she "made several reports of the conduct to other supervisory personnel during the next several weeks of her employment." (Doc.

---

[9] Even though Plaintiff's Response Brief states "January 2005," SMART assumes that she intended to reference "2006" as Plaintiff did not work for SMART in January 2005. All of Plaintiff's allegations relate to conduct that would have occurred after her hire in August 2005.

23, p. 12.) Her distortion of record evidence does not change the fact that her reports were insufficient to put the individuals designated by SMART's harassment policy on notice of sexually harassing conduct by Maddox. What she reported to Sport on January 18, 2006 was that Maddox was a "grouch;" she did not provide details of alleged harassment.[10] (Doc. 18, Tab A, Plt. Depo. at 181:14-20; 218:15-20 & DX 14; Tab C, Sport Aff. ¶23; Tab E, Sport Depo. at 91:7-96:13). She does not know if her letter, dated February 2, 2006,[11] was received by Sport or Hughes, who was not working in Human Resources. (Doc. 18, Tab A, Pl. Depo. at 182:4-188:11 & DX17; Tab C, Sport Aff. ¶26 & Att. H; Tab O, Hughes Aff. ¶¶3,5,7).[12] Generalized reports do not suffice to put SMART on notice, see BE v. Columbia West Palms Hosp. Ltd. Partnership, 490 F.3d 1302, 1310 (11th Cir. 2007); Madray v. Publix Supermarkets, Inc., 208 F.3d 1290, 1300-01 (11th Cir. 2000). Likewise,

---

[10] Her unsupported contention that "the harassment continued unfettered until the last day of her employment" makes no sense in light of her admission that she was hospitalized during the last week of January 2006 (Doc. 18, Tab A, Pl. Depo. at 287:4-16) and the undisputed fact that Maddox was on medical leave during January 2006. (Doc. 18, Tab C, Sport Aff. ¶33 & Att. J). Plaintiff points to no specific harassment occurring during the last two weeks of January. As set forth above, she admits that her work schedule was the same as other employees in the Safety Office.

[11] Notably, this is nearly two weeks *after* her alleged discussion with Sport in the cafeteria and only five days before she abandoned her employment prior to allowing SMART to transfer her.

[12] Even assuming for the purposes of argument only that Hughes was working in Human Resources during the relevant time period, which she was not, and that plaintiff provided her with specific details of Maddox's conduct, she failed to avoid harm otherwise by using alternative means--including going to Ruth Ryan--to report Maddox's conduct until February 1, 2006. See Faragher, 524 U.S. 775.

plaintiff failed to take advantage of the corrective opportunities provided her by SMART, of which she was undisputedly aware, by making reports to Hughes and Kwon who were not part of Human Resources and not her direct supervisors. See Madray, 208 F.3d at 1301-02 (holding that reports to mid-level managers insufficient when not designated by policy).

When she did make a specific report to Ruth Ryan about the shoulder-touching incident on or about February 1, 2006, prompt remedial action was taken. Ryan conducted an investigation, interviewing the only witness identified by plaintiff and concluded that no harassment in violation of policy had occurred. (Doc. 18, Tab A, Pl. Depo. at 206:2-207:6; Ryan Aff. ¶16). Ryan was unable to meet with plaintiff about the results of her investigation because plaintiff failed to return to work thereafter. (Doc. 18, Tab A, Pl. Depo. at 206:2-207:6); Ryan Aff. ¶17).

Ryan did inform plaintiff that she would be transferred--which plaintiff admits she requested--to the production area, which was further away from the Safety Office than the transfer to David McGough's area requested by plaintiff. (Doc. 18, Tab A, Pl. Depo. at 206:6-207:6; 274:11-275:14; Tab B, Ryan AFf. ¶20; Tab C, Sport Aff. ¶28).[13]  The fact that the transfer was to production, where

---

[13] It is undisputed that no further disciplinary action was taken against Maddox because plaintiff provided no further details, Maddox was on medical leave, and he resigned his employment several weeks later. Doc. 18, Tab B, Ryan Aff. ¶18; Tab C, Sport Aff. ¶¶30-33.

plaintiff admittedly would not have one-on-one contact with Maddox--and not David McGough's area in close proximity to the Safety Office--does not render SMART's remedial action ineffective. See Farley v. American Cast Iron Pipe Co., 115 F.3d 1548 (11th Cir. 1997). Even assuming, *arguendo*, that she requested a transfer during her general conversation with Sport on January 18, 2006, the steps taken by SMART were still effective, in that it acted promptly to investigate her *specific* February 1 and 2, 2006 concerns and effected a transfer within two weeks of the discussion with Sport. See, e.g., Stevens v. USPS, 21 Fed. Appx. 261, 264 (6th Cir. 2001) (holding brief delay does not constitute unreasonable failure to take prompt corrective action); Harris v. Lincoln Elec., 54 F.Supp.2d 719, 724 (N.D. Ohio 1998) (employer did not exhibit indifference by week-and-a-half request for transfer and moving employee away from harasser).

The undisputed facts, however distorted by plaintiff in her Response, clearly evidence that plaintiff knew harassment was to be reported to her immediate supervisor or Human Resources. Plaintiff unreasonably failed to avail herself of the means provided her by waiting to report any alleged conduct for two-and-a-half months, see Walton, 347 F.3d at 1272; making only generalized complaints to Sport, see Baldwin, 490 F.3d at 1310; making reports to those not designated by the policy, see Madray, 208 F.3d at 1301-02; and refusing to take advantage of the reasonable corrective measures taken by SMART. See Baldwin, 490 F.3d at 1306.

Because plaintiff unreasonably failed to avail herself of the corrective measures offered by SMART, her claim for sexual harassment must be dismissed. See Watson v. Blue Circle, Inc., 324 F.3d 1252, 1260 (11th Cir. 2003) ("If an employer has actual or constructive notice of harassment but takes immediate and appropriate corrective action, the employer is not liable for harassment").

### F.  SMART is Entitled to Summary Judgment as to Any Asserted Claim for Retaliatory Discharge.[14]

Plaintiff has not attempted to create a genuine issue of material fact as to any claims she may have for retaliatory discharge.[15] Her response brief fails to even mention such a claim. (Doc. 23.) Federal Rule of Civil Procedure 56(e) states, "if the adverse party does not respond, summary judgment, if appropriate, shall be entered against the adverse party." See Avocent Huntsville Corp. v. Clear Cube Technology, Inc., 443 F. Supp. 2d 1284, 1329 n. 172 (N.D. Ala. 2006) (citing Chapman v. AI Transport, 229 F.3d 1012, 1027 (11th Cir. 2000); Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp., 10 F.3d 1563, 1568

---

[14] Plaintiff does not address the issue of constructive discharge in her response brief, but, even if she did, such a claim would not survive SMART's Motion for Summary Judgment (See Doc. 17, pp. 38-40) because plaintiff has failed to set forth any evidence that her working conditions were "so intolerable that a reasonable person in [the employee's] position would have been compelled to resign." Fitz v. Pugmire Lincoln-Mercury, Inc., 348 F.3d 974, 977 (11th Cir. 2003). Plaintiff has not even attempted to meet that burden; therefore, she cannot now rely upon such an allegation to form the basis of a claim for either retaliatory discharge or sexual harassment.

[15] Even though Plaintiff's Complaint does not specifically allege retaliation, SMART addressed such a claim in its Motion and Brief in support thereof.

(11th Cir. 1994)); <u>Bute v. Schuller Int.'s Inc.</u>, 998 F. Supp. 1473, 1477 (N.D. Ga. 1998). Therefore, to the extent Plaintiff's Complaint alleges that SMART terminated her or caused her to resign in retaliation for reporting Maddox's alleged harassment, the Court should find that such allegations are abandoned, and that SMART is entitled to summary judgment because no genuine issue of material fact remains as to such claims.

### III.  CONCLUSION

For the foregoing reasons, SMART respectfully requests that summary judgment be granted, that plaintiff's claims be dismissed with prejudice, and that costs be taxed to plaintiff.

> /s/Marcel L. Debruge
> Marcel L. Debruge (DEB006)
> Kathryn Morris Willis (MOR130)
> Attorneys for Defendant
> SMART ALABAMA, LLC

OF COUNSEL:

**BURR & FORMAN LLP**
3400 SouthTrust Tower
420 North 20th Street
Birmingham, Alabama  35203
Telephone:  (205) 251-3000
Facsimile:  (205) 458-5100

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served on the following by directing same to his office address through first-class, United States mail, postage prepaid, on this the 27th day of November, 2007:

> Richard F. Horsley, Esq.
> Lindsey O. Hill, Esq.
> Goozee, King & Horsley
> 1 Metroplex, Suite 280
> Birmingham, Alabama 35209
>
> Thomas F. Kelly, Jr., P.C.
> 17 Court Square
> P.O. Box 605
> Clayton, Alabama  36016

>> */s/ Marcel L. Debruge*
>> OF COUNSEL