IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **ROBIN ATWELL, an individual,** | ) |
| Plaintiff, | ) ) ) CIVIL ACTION NO. CV-06-1089-MEF |
| v. | ) ) |
| **SMART ALABAMA, LLC, a legal entity,** | ) **ORAL ARGUMENT REQUESTED** ) |
| Defendant. | ) ) |

**DEFENDANT SMART ALABAMA, LLC'S
MOTION FOR RELIEF FROM ORDER**

COMES NOW defendant SMART Alabama, LLC (hereinafter referred to as "Defendant" or "SMART") and, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, respectfully requests that this Court reconsider its partial denial of SMART's Motion for Summary Judgment (Doc. 37). As grounds, SMART states as follows:

1.    The **undisputed** evidence presented to this Court demonstrates that Plaintiff was not entitled to a raise until the expiration of 90 days after she started working in the Safety Office. Therefore, the alleged denial of Plaintiff's "30-day" raise cannot support a tangible employment action claim.

1648826 v2

2.  SMART is entitled to the *Farragher-Ellerth* affirmative defense.

   a.  Plaintiff's unexplained and lengthy delay in reporting the alleged conduct of Rance Maddox is sufficient to establish the second prong of the *Farragher-Ellerth* affirmative defense.

   b.  The Court's assertion that Plaintiff discussed "everything" with Gary Sport is not supported by the evidence in the record. Plaintiff is unsure what she told Sport during their January 18, 2006, meeting.

   c.  The Court's assertion that "had Sport investigated Plaintiff's complaints" immediately he could have "prevented further harassment of Plaintiff by Maddox" is also unsupported by the evidence. Plaintiff was hospitalized for the final week of January 2006, and Maddox was on medical leave beginning January 6, 2006, through February of that same year. Therefore, there was no harassment that could have been prevented after January 18, 2006.

   d.  SMART's offer to transfer Plaintiff on February 7, 2006, shows that it acted both "reasonably" and "promptly" in response to Plaintiff's complaints.

## ARGUMENT

Under Rule 60(b), a court may relieve a party from an order or judgment for "any reason justifying relief from the operation of the judgment." For the

following reasons, SMART respectfully requests that this Court reconsider its partial denial of SMART's Motion for Summary Judgment (Doc. 16):

**I.     SMART Is Entitled to Summary Judgment as to Plaintiff's Tangible Employment Action Claim Based Upon An Alleged Denial of a 30-Day Raise.**

In the Facts section of its Memorandum Opinion and Order, this Court states, "Plaintiff was eligible for a raise to $9.50 an hour after 30 days in the safety department." (Doc. 37, p. 16.) In the Discussion section, it is noted that "Plaintiff was eligible for a raise after 30 days in the safety department." *Id*. at 20. The Court further noted that "Defendant has argued, ***without evidence***, that Plaintiff was not eligible for a raise until 90 days after she started working in the safety department…." *Id*. (emphasis added). This statement is not an accurate characterization of the evidence and arguments before the Court.

Paragraph 26 of SMART's Statement of Undisputed Facts (Doc. 17, p. 7) cites to Plaintiff's deposition testimony for the proposition that she would not have been eligible for a raise in her position in the Safety Office until the expiration of 90 days. SMART reiterated that point in its reply brief. (Doc. 25, pp. 4, 8.) The deposition testimony reads:

> Q.    Now, you started in the safety office in the beginning of November; right?
>
> A.    Correct.

> **Q.    So you would have worked November, December, January before you would have ever even been eligible for the 90-day raise; right?**
>
> **A.    Correct.**
>
> **Q.    But that was -- that would have been at the beginning of February that you would have been eligible -- even eligible for a 90-day raise; right?**
>
> **A.    Right, that's why I said it was 30 to 90 or 60, I don't -- I'll have to look in the handbook.**
>
> Q.    But you -- you only worked until the 7th of January -- I mean February, I'm sorry, and then left; right?
>
> A.    Correct.

(Doc. 18, Exh. 1, Pl.'s Depo., p. 164:8-22.)  Plaintiff never disputed the fact that she would not have been eligible for a raise for 90 days.  In fact, as noted by SMART in its reply brief, Plaintiff never specifically responded to any of SMART's Undisputed Facts.  (Doc. 25, p. 1, n. 1.)  Although she continuously cites 30-days as the time period in which she would have been eligible for a raise in her response brief, Plaintiff never provided any support for her assertion, and she never disputed her own deposition testimony demonstrating that she would not have been eligible for a raise until February 2007.  Based upon this testimony, it is not clear how the Court arrived at the conclusion that Plaintiff was entitled to a raise after only 30 days.

In addition to agreeing that she would not have been entitled to a raise until after the expiration of 90 days, Plaintiff also deferred to SMART's Employee Handbook for the actual time period for eligibility. (*See* Plaintiff's Deposition Testimony quoted *supra*.) The Handbook was attached to Plaintiff's deposition as Exhibit 3 and clearly states on page 14 that the introductory period for employees is 90 days. (Doc. 18, Exh. 1, Pl.'s Depo., Exh. 3, p. 14.) According to the Handbook, "[a]t the end of this period, your supervisor… will conduct a formal review to discuss your performance to date and to answer any outstanding questions you may have." *Id*. Plaintiff acknowledged that a review was required before she would be entitled to a raise:

> Q. Okay. So you did get a raise?
>
> A. No, I stayed at my regular pay rate that I was on third shift but I never got my 30-day raise.
>
> Q. What was the --
>
> A. **Or 30- or 90-day, I'm not certain.  Anyway, there was a raise period that came in there where I had to have an evaluation.** Rance told me to write it out and I wrote it out. He said, I'll sign it. I took it to him to sign it. I felt like he wanted certain favors in order to sign that. I tore it up and threw it in the garbage. **I never asked for my raise.**
>
> Q. So you didn't ask for it?
>
> A. I asked Rance to do my paperwork.
>
> Q. But you never went to Gary about your raise?
>
> A. No.

> Q. Never went to Ruth about your raise?
>
> A. No.
>
> Q. Never went to anybody else in HR about your raise?
>
> A. No, because it has to go through your supervisor. **They have to give you a good report in order for you to get your raise**.

(Doc. 18, Exh. 1, Pl.'s Depo., pp. 163:5-164:7.) Plaintiff's review would not have occurred until February 2006, and Plaintiff would not have been eligible for any raise until after that time. (Doc. 18, Exh. 1, Pl.'s Depo., Exh. 3, p. 14.)

Based on the undisputed evidence in this case, as presented to the Court in both Defendant's brief in support of its Motion for Summary Judgment and its reply brief, Plaintiff was not eligible for a raise until February 2006. Plaintiff's last day of employment with SMART was February 7, 2006, and there is no evidence in the record that had Plaintiff not voluntarily left her employment with SMART she would not have received a raise. In fact, the record reflects that not only is it inaccurate to state that SMART argued "without evidence" that Plaintiff would not have been eligible for a raise for 90 days, it is Plaintiff's assertions in her response brief that she was eligible for a raise after only 30 days that are unsupported by the evidence. The Court is obligated to view the evidence in a light most favorable to the non-moving party, but the Court is not to view the assertions of a nonmovant in its brief in a light that contradicts the evidence on record.

1648826 v2

A raise to which Plaintiff was not yet entitled cannot serve as the basis for a tangible employment action claim. Therefore, there remains no genuine issue of material fact with regards to Plaintiff's claim that she suffered a tangible employment action based on the alleged denial of a raise after only 30 days.

**II.    SMART Is Entitled to the *Farragher-Ellerth* Affirmative Defense.**

This Court held that SMART did not meet the second prong of the *Farragher-Ellerth* affirmative defense, which requires "an employer need not act instantaneously, but must act in a reasonably prompt manner to respond to the employee's complaint."  (Doc. 37, p. 26 (citing *Frederick v. Sprint/United Management Co.*, 246 F.3d 1305, 1314 (11th Cir. 2001).)  Although Fran Hughes was not performing Human Resource functions and was not a proper individual to receive complaints of alleged harassment, the Court found "that no reasonable jury could conclude that it was unreasonable for Hughes not to investigate Plaintiff's complaint until after February 2, 2006 because Plaintiff is the one who decided to submit the details of her complaint in writing and not verbally."  (Doc, 37, p. 27.)  However, the Court determined that Gary Sport, Human Resource Manager for SMART at that time, "did not act with reasonable care to promptly investigate Plaintiff's allegations." *Id*.

A. **Plaintiff's Unexplained and Lengthy Delay In Reporting Maddox's Conduct is Sufficient to Establish the Second Prong of *Farragher-Ellerth*.**

The Court does not address the lengthy delay between the first alleged instances of harassment and Plaintiff's report to Gary Sport. As noted in SMART's reply brief (Doc. 25), there was a delay of almost two-and-a-half months (November 2005 to January 2006) from when Plaintiff claims to have first been harassed (November 2005) and the first time she allegedly reported any such behavior (January 18, 2006). *See, e.g., Walton v. Johnson & Johnson Svcs., Inc.*, 347 F.3d 1272, 1289 (11th Cir. 2003) (holding that employee unreasonably failed to take advantage of anti-harassment policy when she waited three months to report harassment); *Taylor v. CSX Transp.*, 418 F. Supp. 2d 1284 (M.D. Ala. 2006) (holding that employee's failure to timely report established second element of affirmative defense). The Eleventh Circuit's opinion in *Walton* and this District Court's opinion in *Taylor* demonstrate that Plaintiff's unexplained and lengthy delay is more than sufficient to establish the second prong of the *Farragher-Ellerth* affirmative defense.

B. **Plaintiff is Uncertain What She Reported to Gary Sport.**

The earliest Plaintiff discussed Maddox's alleged conduct with Sport was on January 18, 2006. (Doc. 37, p. 27.) According to the Court, "Plaintiff told Sport that Maddox asked her whether her breasts were real and what they felt like.

Generally, Plaintiff told Sport 'everything that was making [her] feel uncomfortable.'" *Id.* It remains undisputed that Plaintiff is not certain what she told Gary Sport on January 18, 2006:

> Q. Okay. What specifically did you tell Gary?
>
> A. That he was out of the way, **I don't remember exactly what my words were….**

(Doc. 18, Exh. 1, Pl.'s Depo., p. 181:14-20.)

> Q. What specifically did you tell Gary in the cafeteria?
>
> A. I don't remember specifically what I said to Gary in the cafeteria other than what had been going on with Rance, **I don't know in what details.**

(Doc. 18, Exh. 1, Pl.'s Depo., p. 218:15-20.) Even though this Court states in its Facts section that "Plaintiff does not remember specifically what else she told Sport," the Court "presumes" in its Discussion section that when Plaintiff says she told Sport "everything," it included the instances of touching and rubbing Plaintiff's breasts and other parts of her body. (Doc. 37, pp. 12, 27.) However, in response to Plaintiff's vague assertion that she reported Maddox's conduct to him, even though she does not remember what she reported, Sport testified that Plaintiff never reported such instances to him:

> Q. Is it your testimony that Robin Atwell never reported to you that Rance Maddox touched her on her shoulders?
>
> A. That's correct. Never directly to me.

1648826 v2

…

Q.   Did Robin Atwell ever tell you that Rance Maddox gave her a hug that she perceived as inappropriate on November 16th of 2005, her birthday?

A.   I don't recall her telling me that he hugged her on his birthday.

Q.   Has Robin Atwell ever told you that Rance Maddox repeatedly touched her on her arms, hands, and attempted to hold hands with her while he was speaking with her at work?

A.   No.

Q.   Has Robin Atwell ever told you that Mr. Maddox repeatedly put his arm around Ms. Atwell and rubbed her back while at work?

A.   No.

…

Q.   Has Ms. Atwell ever informed you that Mr. Maddox on numerous occasions deliberately rubbed his pelvis area against her buttocks?

A.   No.

…

Q.   Did Ms. Atwell ever tell you that Mr. Maddox asked her if her breasts were real and asked her what they felt like?

A.   No.

…

Q.   Did Ms. Atwell ever tell you that Mr. Maddox had grabbed both of her shoulders and squeezed them as if he were giving her a massage?

    A.    No, Ms. Atwell never told me directly.

…

    Q.    Did she ever tell you that Mr. Maddox had put his hands on her shoulders and moved them down just above her breasts and rubbed the top of her breasts?

    A.    No.

    Q.    Did you ever hear that indirectly from anyone else?

    A.    No.

(Doc. 18, Exh. 1, Pl.'s Depo., pp. 91:6-95:22.)  At best, Plaintiff's reports to Gary Sport were general in nature and not the all-inclusive type of report the Court assumes it to be.  There is simply no evidence to support the Court's "presumption" that Plaintiff told Sport about any touching or rubbing of Plaintiff's breasts or other parts of her body.  Plaintiff's generalized reports to Sport were insufficient to put SMART on notice of any sexually harassing behavior.  *See BE v. Columbia West Palms Hosp. Ltd. Partnership*, 490 F.3d 1302, 1310 (11th Cir. 2007); *Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290, 1300-01 (11th Cir. 2000).

    **C.**    **Sport Acted "Reasonably" and "Promptly" to Plaintiff's Complaints of Harassment.**

According to the Court's own interpretation of the facts, "Sport asked Plaintiff to write a letter to Maddox outlining her complaints, and said that he would talk to Maddox only after Plaintiff wrote this letter."  The Court does not question whether Sport's request that Plaintiff draft a letter was reasonable.  Rather,

the Court questions the speed with which Sport responded to Plaintiff's Complaint, holding that "[h]ad Sport investigated Plaintiff's complaints by immediately discussing them with Maddox and others in the safety department, he may have prevented further harassment of Plaintiff by Maddox." (Doc. 37, pp. 27-28.)

First, without more specific allegations, as both Plaintiff and Sport's deposition excerpts above (and cited to in SMART's previous briefs) make clear, Sport would not have known what conduct Maddox was engaging in that was considered harassment by Plaintiff. Second, as this Court points out, Sport reacted immediately by requesting that Plaintiff draft a letter to Maddox outlining her complaints and telling her that he would talk to Maddox after he received the letter. (Doc. 37, p. 12.) Third, despite this Court's assertion that there was "further harassment of Plaintiff by Maddox," there is absolutely no evidence in the record that this is the case. In fact, Plaintiff admits that she was hospitalized during the last week of January 2006. (Doc. 18, Tab A, Pl. Depo. at 287:4-16.) Furthermore, Rance Maddox was on medical leave beginning January 6, 2006, and extending into February 2006. (Doc. 18, Tab C, Sport Aff. ¶33 & Att. I). As noted in SMART's reply brief, Plaintiff has not pointed to any acts of harassment which occurred during the last two weeks of January 2006. (Doc. 25, p. 15, n. 10.) Therefore, the evidence clearly contradicts the implication that Maddox engaged in harassing behavior after January 18, 2006, that could have been prevented by a

1648826 v2

response other than Sport's immediate request that Plaintiff draft a letter outlining specific instances of Maddox's alleged misconduct.

### D. SMART's Offer to Transfer Plaintiff Meets the Second Prong of *Farragher-Ellerth*.

Even assuming, *arguendo*, that Plaintiff requested a transfer during her general conversation with Sport on January 18, 2006, the evidence before the Court shows that SMART acted promptly to investigate her *specific* February 1 and 2, 2006, concerns and effected a transfer within two weeks of the discussion with Sport. Ruth Ryan offered to transfer Plaintiff out of the Safety Office on February 7, 2006. *See, e.g., Stevens v. USPS*, 21 Fed. Appx. 261, 264 (6th Cir. 2001) (holding brief delay does not constitute unreasonable failure to take prompt corrective action); *Harris v. Lincoln Elec.*, 54 F. Supp. 2d 719, 724 (N.D. Ohio 1998) (employer did not exhibit indifference by week-and-a-half request for transfer and moving employee away from harasser).

## CONCLUSION

For the foregoing reasons, SMART respectfully requests that this Court reconsider its partial denial of SMART's Motion for Summary Judgment. Because there are no genuine issues of material fact relating to Plaintiff's tangible employment action claim based upon the denial of a pay raise and because SMART is entitled to the *Farragher-Ellerth* affirmative defense, SMART is entitled to a judgment as a matter of law.

1648826 v2

WHEREFORE, PREMISES CONSIDERED, SMART respectfully requests that this Court reconsider its partial denial of SMART's motion for summary judgment, that it conclude that there are no genuine issues of material fact relating to Plaintiff's claim based upon a tangible employment action, that SMART is entitled to the *Farragher-Ellerth* affirmative defense, and that it enter a judgment as a matter of law in its favor.

/s/Marcel L. Debruge  
Marcel L. Debruge  
Kathryn Morris Willis  
Austin E. Smith  
Attorneys for Defendant  
SMART ALABAMA, LLC

OF COUNSEL:

**BURR & FORMAN LLP**
3400 SouthTrust Tower
420 North 20th Street
Birmingham, Alabama  35203
Telephone:  (205) 251-3000
Facsimile:  (205) 458-5100

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing has been served on the following through the use of the Court's Electronic Filing System or via U.S. Mail, postage prepaid to the following addresses on this the 10th day of March, 2008:

    Richard F. Horsley, Esq.
    Lindsey O. Hill, Esq.
    King, Horsley & Lyons, LLC
    1 Metroplex, Suite 280
    Birmingham, Alabama 35209

    Thomas F. Kelly, Jr., P.C.
    17 Court Square
    P.O. Box 605
    Clayton, Alabama  36016

                                */s/ Marcel L. Debruge*
                                OF COUNSEL